STATE OF NORTH CAROLINA v. EDWARD LEE CUMMINGS

No. 365A87

(Filed 1 March 1990)

**1. Criminal Law § 106 (NCI4th); Constitutional Law § 30 (NCI3d) — first degree murder — discovery — denied — no error**

The trial court did not err in a first degree murder prosecution by denying defendant's motion for disclosure of notes and tape recordings of interviews of potential witnesses where defendant made no assertion of any particular material which was withheld or suppressed but was merely speculating that something may have been, and it was clear from the record that the prosecutor had produced all material to date and understood his continuing duty to disclose.

**Am Jur 2d, Criminal Law §§ 998, 999, 1010.**

**2. Constitutional Law § 63 (NCI3d); Jury § 7.11 (NCI3d) — death qualified jury — Witt question — juror's knowledge of duties**

There was no error in jury selection for a first degree murder prosecution where, whenever the prosecutor challenged a juror for cause based on opposition to the death penalty, the trial court asked, "Is your view of the death penalty such that it would prevent or substantially impair your performing your sworn duties as a juror?" A review of the record reveals numerous explanations by the court and the prosecutor of the prospective jurors' possible duties during the sentencing phase, and an affirmative response to the question was a valid basis for allowing the prosecutor's challenge for cause. Furthermore, the court declined defendant's request to reconsider *State v. Barts*, 316 N.C. 666.

**Am Jur 2d, Jury §§ 289, 290.**

**3. Jury § 6.4 (NCI3d) — first degree murder — death qualification of jury — opportunity to rehabilitate denied — no error**

The trial court did not err during jury selection in a first degree murder prosecution by not allowing defendant to rehabilitate prospective jurors challenged for cause by the State on the basis of opposition to the death penalty. The recent U. S. Supreme Court decisions in *Ross v. Oklahoma*, 484 U.S. 970, and *Gray v. Mississippi*, 481 U.S. 648, are both

distinguishable, and in this case the court extended defendant the opportunity to propound additional questions through him to the jury in those situations where the juror's views were not clear.

**Am Jur 2d, Jury §§ 289, 290.**

4. **Jury §§ 7.9, 7.10 (NCI3d) — first degree murder — prospective juror with preconceived opinions and relationship with witness — ability to set aside opinions — challenge for cause denied**

The trial court did not err in a first degree murder prosecution by denying defendant's challenge for cause of a prospective juror where the voir dire tended to show that the prospective juror was a close friend and supporter of the State's witness Sheriff Barrington, had knowledge of the case based upon newspaper and television coverage, and could be potentially biased against defendant if defendant elected to offer no evidence at trial. The juror stated in response to a question by the trial court that he could lay aside any preconceived opinions he may have held as to defendant's guilt or innocence and decide the case based entirely on the evidence presented at trial.

**Am Jur 2d, Jury §§ 299, 303, 304, 322.**

5. **Criminal Law § 34.4 (NCI3d) — murder — evidence of another murder — admissible**

The trial court did not err in a first degree murder prosecution by admitting evidence of the murder of the victim's sister where defendant was charged in separate indictments with the murder of both sisters; defendant's motion to sever the cases for trial was allowed; the State elected to try defendant for the murder of Karen Puryear; defendant moved to exclude from the trial all evidence of Teresa Puryear's murder; the court denied the motion, concluding that evidence of Teresa's death was relevant to show the identity of Karen's murderer because the deaths were distinctly similar with respect to the victims, the manner of death, the manner of disposition of the bodies, and the location of the bodies; and the State introduced evidence of defendant's attitude toward Teresa prior to her disappearance, the facts of her disappearance, the discovery of her remains near the site where her sister's body

was discovered, and a description of her remains. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 321-326, 331.**

6. **Criminal Law § 34.4 (NCI3d) — murder — second degree murder — continuing objection**

There was no error in a first degree murder prosecution from the court's ruling on defendant's motion for a continuing objection to evidence of another murder where defendant withdrew his motion when the trial court expressed its concern that a line objection would make it difficult to assure that all of defendant's objections were properly noted and preserved in the record.

**Am Jur 2d, Trial § 176.**

7. **Criminal Law §§ 73.3, 73.4 (NCI3d) — murder — hearsay — admissible**

The trial court did not err in a first degree murder prosecution by admitting the hearsay testimony of three witnesses regarding statements by the victim that defendant had beaten her, threatened to kill her, and kicked her out of his house, and that she had taken out a child support warrant against the defendant and had sought an attorney's advice regarding custody of the children. The conversations were admissible as exceptions to the hearsay rule under N.C.G.S. § 8C-1, Rule 803(3) for state of mind, emotional condition, physical condition and present sense impression.

**Am Jur 2d, Homicide § 330.**

8. **Homicide § 25.2 (NCI3d) — murder — instructions — premeditation and deliberation**

There was no plain error in a prosecution for first degree murder in the trial court's instruction on premeditation and deliberation where defendant contended that there was no evidence of a "lack of provocation by the victim," "use of grossly excessive force," or "infliction of lethal wounds after the victim was felled," and thus that the jury was allowed to infer premeditation and deliberation from elements unsupported by the evidence. The instruction was delivered straight from the North Carolina Pattern Jury Instructions, the elements listed were merely examples of circumstances which the jury

could use to infer premeditation and deliberation, and there was evidence to support each of the objectionable elements.

**Am Jur 2d, Homicide §§ 484, 501.**

9. **Criminal Law § 816 (NCI4th) — first degree murder — prior statement — instruction refused**

The trial court did not err in a prosecution for first degree murder by refusing to charge on impeachment and corroboration by prior statement where the charge was given verbatim from the Pattern Jury Instructions.

**Am Jur 2d, Homicide §§ 484, 539.**

10. **Homicide § 30 (NCI3d) — first degree murder — refusal to instruct on second degree murder — no error**

The trial court in a first degree murder prosecution did not err by refusing to submit second degree murder as a possible verdict where the facts indicated a coldly calculated killing planned well in advance and not a killing occurring on the spur of the moment in response to some unanticipated provocation. The mere possibility that the jury could return with a negative finding does not, without more, require the submission of the lesser included offense.

**Am Jur 2d, Homicide § 530.**

11. **Criminal Law § 50.2 (NCI3d) — murder — opinion of nonexpert as to articles at scene — admissible**

The trial court in a first degree murder prosecution did not err by allowing an SBI agent to compare physical evidence to other evidence which had been misplaced from the SBI lab where it was sent for testing and storage pending trial where the objects in question were the plastic bags and sheets in which two bodies were wrapped when discovered; the odor of those materials was so intense that they were moved several times following complaints; they were finally placed in an outside shed from which they disappeared; and an SBI agent who had observed the plastic bags and sheets on the day they were found and at the various times they were moved identified photographs, explained the disappearance, and noted the similarity of the missing items to items found in one victim's car. The agent's testimony was obviously based on first-

STATE v. CUMMINGS

[326 N.C. 298 (1990)]

hand knowledge and observation and was clearly helpful to the jury; its credibility was for the jury to determine.

**Am Jur 2d, Evidence § 453.**

12. **Homicide § 20.1 (NCI3d)— first degree murder—autopsy photos—admissible**

The trial court did not err in a first degree murder prosecution by introducing into evidence two autopsy photographs where both photographs were introduced for purposes other than to arouse the passions of the jury, there was no unnecessary repetition, and there were no complaints of the manner in which the photographs were entered.

**Am Jur 2d, Homicide §§ 417-419.**

13. **Searches and Seizures § 23 (NCI3d)— first degree murder— items seized pursuant to warrant—probable cause**

The trial court did not err in a first degree murder prosecution by admitting evidence seized from defendant's residence and automobiles pursuant to search warrants where, under the totality of the circumstances, all three search warrants were supported by extensive and complete affidavits that established unarguable probable cause.

**Am Jur 2d, Searches and Seizures §§ 64, 67-69.**

14. **Criminal Law § 1324 (NCI4th)— murder—sentencing—aggravating and mitigating circumstances—written list**

There was prejudicial error in a first degree murder prosecution in the denial of defendant's request that proposed nonstatutory mitigating circumstances be listed in writing on the issues and recommendation form. Where a defendant makes a timely written request for a listing in writing on the form of possible nonstatutory mitigating circumstances that are supported by the evidence and which the jury could reasonably deem to have mitigating value, the trial court must put such circumstances in writing on the form. This rule shall be applied prospectively only.

**Am Jur 2d, Homicide §§ 554, 555.**

Justice WEBB dissenting.

STATE v. CUMMINGS

[326 N.C. 298 (1990)]

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a death sentence entered by *Farmer, J.*, at the 6 April 1987 Criminal Session of Superior Court, HOKE County. Heard in the Supreme Court 13 September 1989.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the state.*

*Harry H. Harkins, Jr., for defendant-appellant.*

MARTIN, Justice.

Defendant contends he is entitled to a new trial or, in the alternative, a new sentencing hearing. We find no error in the guilt phase but remand for a new sentencing hearing.

On Tuesday, 14 January 1986, the bodies of two white females were found by members of a crew baling pine straw. They were approximately one hundred feet apart near a pond in a wooded area of land owned by the State of North Carolina about 1.5 miles from a house owned by defendant in Hoke County. The bodies were transported to the state medical examiner's facility in Chapel Hill where Drs. Page Hudson and James Michael Sullivan performed autopsies and identified the remains as Karen Puryear and her sister, Teresa Puryear. Both victims had been shot in the back of the head with a small caliber pistol, undressed, wrapped in clear and black plastic material and sheets, and were buried in shallow graves. Both victims were also missing an extremity. Teresa Puryear's body was in a more advanced stage of decomposition.

Edward Lee Cummings was arrested on 20 January 1986 and subsequently indicted for the murders of Karen Marie Puryear and Teresa Annette Puryear on 17 February 1986. The trial was bifurcated upon motion of the defendant. This appeal only concerns the defendant's conviction for the murder of Karen Puryear.

At trial, the state presented evidence which tended to show that:

Defendant married Hazel McNeill in 1964. She lived with the couples' four children in their home in Willow Springs until August of 1984.

In May of 1974, defendant met and became involved with Faye Puryear. Mrs. Puryear had three children who were currently liv-

ing in a foster home but moved back in with her at or around this time. Karen was eleven years old, Brad was nine and Teresa was six. The relationship between Mrs. Puryear and defendant dwindled into a mere friendship. When Karen, the oldest daughter, was 14 or 15 years old, the defendant, age 37 at this time, developed an intimate relationship with her. In September of 1980, Karen became pregnant by defendant and had an abortion. In 1982, she delivered a child fathered by defendant and named him "Little Eddie." In 1983, Karen lost a child fathered by defendant as a result of crib death and, in 1984, she had another child by defendant whom she named Crystal. Karen and her children moved into defendant's Willow Springs home after it was vacated by defendant's wife and four children in 1984.

During this time, defendant had difficulty getting along with Teresa Puryear, Karen's younger sister. On 15 September 1983, Mrs. Puryear got a Juvenile Petition to keep her younger daughter in school and three days later, she reported Teresa missing. Teresa was never seen alive again.

In June of 1985, Karen left the defendant and eventually found a home of her own in Raleigh. On 10 October 1985 she lodged a criminal complaint against defendant for nonsupport. Five days later defendant took the children to his home when Karen asked him for money for medicine for one of them. Defendant refused to return the children and Karen started proceedings with Legal Services to get the children back. She, however, did not follow through with this course of action. After being served with the summons in the nonsupport case, defendant on 29 October 1985 brought the children back to Karen to go trick or treating. On 14 November 1985 Karen went to the day care center to pick up her children around 3:30 p.m. Within 10 minutes, defendant drove up in his truck. He picked up Little Eddie and drove off. Karen followed in the same direction with Crystal in her car. This is the last time anyone recalls seeing Karen Puryear alive.

On 15 November 1985 defendant told Mrs. Puryear that, on the previous day, he and Karen had taken the two children shoe shopping and Karen had asked him for $150.00. He refused and she left alone around 5:30 p.m.

Additional facts will be set forth as necessary with respect to the various issues.

Further evidence adduced at trial by the state tended to show that the defendant had killed both women because he believed he had been cheated out of possible profits from drug transactions and because of a general antagonism towards "white and Indian women." The defendant proffered no evidence. After over a month of testimony, the defendant was found guilty of murder in the first degree.

During the sentencing phase the jury found as an aggravating circumstance that the crime was especially heinous, atrocious or cruel. The jury found no mitigating circumstances. Edward L. Cummings was sentenced to death.

## GUILT PHASE

### I.

[1] Defendant first assigns as error the trial court's denial of his motion for disclosure of notes and tape recordings of interviews of potential trial witnesses. Prior to trial defendant filed a document entitled "Motion for Disclosure of Information Necessary to Prepare for Defense of Case" requesting: (1) all members of the Hoke County and Wake County Sheriffs' Departments and the City of Raleigh Police Department who participated in the investigation to turn over all information developed during the investigation; (2) the prosecutor to review all the material submitted and disclose any exculpatory material to defense counsel; (3) the prosecutor to disclose any oral or written statements of the defendant; and, (4) Judge Farmer to personally monitor compliance with the previous requests. Judge Farmer granted requests (2) and (3) and denied requests (1) and (4). Defendant contends that he is entitled to the disclosure of all information developed during the investigation under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), and failure to produce it deprived him of his due process rights to a fair trial. Defendant makes no assertions of any particular material which was withheld or suppressed but is merely speculating that something may have been. From the record it is clear that the prosecutor had produced all the material compiled to date and understood his continuing duty to disclose. Nothing erroneous or prejudicial resulted from the ruling. This assignment of error is without merit.

## II.

[2] Defendant concedes that the United States Supreme Court and the North Carolina Supreme Court have upheld the practice of "death qualification" of prospective jurors under the federal and North Carolina Constitutions. *Lockhart v. McCree*, 476 U.S. 162, 90 L. Ed. 2d 137 (1986); *State v. Barts*, 316 N.C. 666, 343 S.E.2d 828 (1986). However, defendant asserts that prejudicial error was committed in the selection of his jury even under the existing law. We disagree.

The United States Supreme Court has held that the "proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment" is whether the views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985). Such sworn duties of a juror in a capital sentencing hearing include consideration of aggravating and mitigating circumstances, weighing such circumstances under the court's instructions, and exercising the guided discretion necessary for a reliable sentence. In the case at bar, whenever the prosecutor challenged a juror for cause based on opposition to the death penalty, the trial court asked, "Is your view of the death penalty such that it would prevent or substantially impair your performing your sworn duties as a juror?" If the prospective juror answered affirmatively, the court allowed the challenge for cause. Defendant contends that, at this point in the proceedings, the jurors did not know what their sworn duties would be and, therefore, were dismissed on the basis of their given response rather than on the basis of individualized findings of unfitness to serve. A review of the record reveals numerous explanations by the court and the prosecution of the prospective juror's possible duties during the sentencing phase should the trial proceed to that point.

Thus, we hold that the potential jurors had been indoctrinated into the nature of their responsibilities and that an affirmative response to the *Witt* question posed by the trial court was a valid basis for allowing the prosecutor's challenge for cause. Furthermore, this Court declines defendant's request to reconsider the constitutionality of its holding in *Barts*.

## III.

[3] Defendant also asserts as error the trial court's refusal to allow him to further question or "rehabilitate" the prospective jurors who were challenged for cause by the state on the basis of opposition to the death penalty. While acknowledging that we have already decided that defendants are not entitled to engage in attempts to rehabilitate, *State v. Zuniga*, 320 N.C. 233, 357 S.E.2d 898, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987) and *State v. Oliver*, 302 N.C. 28, 274 S.E.2d 183 (1981), *appeal after remand*, 309 N.C. 326, 307 S.E.2d 304 (1983), *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987), defendant argues that the recent United States Supreme Court decisions in *Ross v. Oklahoma*, 487 U.S. 81, 101 L. Ed. 2d 80, *reh. denied*, --- U.S. ---, 101 L. Ed. 2d 962 (1988) and *Gray v. Mississippi*, 481 U.S. 648, 95 L. Ed. 2d 622 (1987), *reh. denied*, --- U.S. ---, 101 L. Ed. 2d 962 (1988), merit a reconsideration of our holding. We disagree. Both of the United States Supreme Court cases are distinguishable from the case *sub judice*. Neither case turns on what defendant requests: the opportunity to rehabilitate prospective jurors during the prosecutor's voir dire examination. The defendant is not allowed to rehabilitate a juror who has expressed unequivocal opposition to the death penalty in response to questions propounded by the prosecutor and the trial court. The reasoning behind this rule is clear. It prevents harassment of the prospective jurors based on their personal views toward the death penalty.

Here, the trial court went further and carefully extended defendant the opportunity to propound additional questions through him to the jury in those situations where the juror's views were not clear. "When challenges for cause are supported by prospective jurors' answers to questions propounded by the prosecutor and by the court, the court does not abuse its discretion, at least in the absence of a showing that further questioning by defendant would likely have produced different answers, by refusing to allow the defendant to question the juror challenged." *State v. Oliver*, 302 N.C. at 40, 274 S.E.2d at 191. Defendant has made no such showing and his argument is without merit. Our prior holdings stand.

## IV.

[4] Defendant next argues that the trial court erred in denying his challenges for cause of prospective juror Walters. Defendant contends that Walters indicated that he might be biased against

defendant in the event defendant offered no evidence at trial or on the basis of Walters' friendship with Sheriff Barrington, a potential witness for the state. It is defendant's further belief that Walters should have been excused under N.C.G.S. § 15A-1212. We disagree. The trial court is not required to remove from the panel every potential juror who has any preconceived opinions as to the potential guilt or innocence of a defendant. Defendant's suggested "interpretation would remove all discretion from the trial judge in determining whether the juror could render a fair, impartial, and unbiased judgment." *State v. Wright*, 52 N.C. App. 166, 171, 278 S.E.2d 579, 584, *disc. rev. denied*, 303 N.C. 319, 281 S.E.2d 658 (1981). If the prospective juror, in the trial court's opinion, credibly maintains that he will be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court," *Irvin v. Dowd*, 366 U.S. 717, 723, 6 L. Ed. 2d 751, 756 (1961), then it is not error for the court to deny defendant's motion to remove said juror for cause. Here, the initial voir dire examination tended to show that juror Walters was a close friend and supporter of state's witness, Sheriff Barrington, had knowledge of the case based upon newspaper and television coverage and could potentially be biased against defendant if he elected to offer no evidence at trial. The transcript contains the following question presented to juror Walters by the court:

> COURT: If the court instructed you that defendant is presumed innocent in the trial of any case, does not have to present evidence, and has no burden of proof, and if he chose not to testify, if the court instructed you not to hold that against him, would you follow that instruction that I gave to you in your deliberations?
>
> JUROR #5: Yes, sir. If you told me not to hold it against him, I wouldn't.

The juror stated that he could lay aside any preconceived opinions he may have held as to defendant's guilt or innocence and decide the case based entirely upon the evidence presented at trial. We hold that the trial court did not abuse its discretion in ruling that prospective juror Walters was competent to sit. This assignment of error is overruled.

## V.

[5] Defendant's most salient argument is that the trial court erroneously admitted evidence of the murder of Karen's sister, Teresa

Puryear. We disagree and find that the evidence was properly admitted as an exception pursuant to N.C.G.S. § 8C-1, Rule 404(b) (1988).

Defendant was charged, in separate indictments, with the murders of Karen and Teresa Puryear. Defendant moved to sever the cases for trial and the trial court allowed the motion, reasoning that there might be "a similar modus operandi with some factual similarities in both cases but not sufficient evidence to establish a transactional connection to warrant joinder." The state elected to first try defendant for the murder of Karen Puryear and defendant then moved to exclude from the trial all evidence of Teresa's murder. The trial court disallowed this motion while concluding that the deaths were "distinctly similar with respect to the victims, manner of death, manner of disposition of the bodies, and location of the bodies," and that evidence of Teresa's death was "relevant to show the identity of the perpetrator" of Karen's murder. As a result, the state was allowed to introduce evidence of defendant's attitude towards Teresa prior to her disappearance, the facts of her disappearance, the discovery of her remains near the site where her sister Karen's body was discovered, and a description of her remains. It is defendant's contention that this ruling amounted to error or, in the alternative, an abuse of the trial court's discretion.

Rule 404 provides, in pertinent part:

(b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1988). This Court established the procedure to be followed when considering the admissibility of evidence under the listed exceptions in *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986). The Court said:

In determining the admissibility of extrinsic conduct evidence pursuant to Rule 404(b), the trial judge must first determine the preliminary issue of whether the conduct is being offered pursuant to that rule. . . . Under Rule 404(b) . . . evidence regarding extrinsic acts is not limited to cross-examination and may be proved by extrinsic evidence. . . . If the trial

judge makes the initial determination that the evidence is of the type and offered for the proper purpose under Rule 404(b), the record should so reflect.

The next step in determining admissibility of the extrinsic conduct evidence under Rule 404(b) is a determination of its relevancy. As stated earlier, Rule 404(b) allows the use of extrinsic conduct evidence so long as the evidence is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried.

*Id.* at 636-37, 340 S.E.2d at 91.

In the case at bar, Judge Farmer clearly determined, after careful deliberation, that, in his opinion, the evidence was of the type intended by the exceptions set forth in Rule 404(b) and that it was offered for the contemplated purpose. Judge Farmer made the following remarks for the record:

> As I indicated to counsel I believe when I heard the motion to sever these two cases, I issued an order to sever; that they do show a similar *modus operandi*, and have a lot of similar factual matters, but I thought it was a very close case because of the two-year span difference; that there may be some question concerning whether or not there was a transactional connection under the statute and the law in this state to warrant a joinder, so that's why I severed them.

> But, because of severance does not mean that [the] exception under Rule 404(b) is not applicable, because if it goes to show the identity, I think the evidence is admissible. At this point I'm going to—based upon what counsel says the evidence will show, I'm going to deny the motion to exclude at this point because I think it would be an exception under Rule 404(b).

Judge Farmer's written order dated 13 April 1987 incorporated the above legal conclusions.

The next inquiry, under *Morgan*, goes to the relevancy of the proffered evidence. The state's evidence tended to show, in part, that: Defendant was connected to this killing by his comments to Fred Jacobs while they were in the same cell in the Hoke County jail during June and July, 1986 to the effect that he killed Karen's sister because she left some drugs in the wrong place that he had given her to deliver. There was independent, cor-

roborative evidence that a black briefcase full of cocaine was found abandoned near Enfield. Teresa's body was buried within sight of Karen's body; both were within 1.5 miles of defendant's land in Hoke County; both had been killed by a bullet fired from a small caliber weapon into the brain through the back of the head; both had been shot at least one other time in a non-lethal fashion; portions of their hands and arms had been removed; both bodies were buried nude; and, both bodies were wrapped in cloth and then in layers of plastic. When alive, both women had gone through periods of growing conflict with defendant before their disappearance and defendant was a longtime acquaintance of both. The state argues that this evidence is highly relevant to show identity, opportunity, intent, plan, knowledge and the absence of mistake, accident or entrapment. We agree. The general rule is well explained in the often-quoted passage in Dean Brandis' treatise on evidence:

> [Evidence of other offenses] is inadmissible on the issue of guilt if its only relevance is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it shows him to have been guilty of an independent crime.

1 Brandis on North Carolina Evidence 3d § 91 (1988). There was no error in allowing the jury to hear the evidence surrounding Teresa's murder for the limited purposes for which it was admitted.

[6] It is defendant's further assertion that the court committed prejudicial error in disallowing his request to make a continuing objection to the admission of the evidence of Teresa's murder. Thus, defendant contends he was forced to make hundreds of objections and motions to strike during the trial which disrupted the trial and irritated the jury.

Immediately after Judge Farmer had decided that evidence of the killing of Teresa Puryear would be admitted pursuant to the exceptions in Rule 404(b), the following transpired:

> MR. PARISH (defense counsel): Thank you, your Honor. We would except. I do have a question now because I don't want to disrupt the flow of the trial. How — we, of course, except. How would you suggest, if you have a suggestion, that we object to preserve during the course of the trial? Could we

have a line objection to that, or do you desire that we object — I mean, we can do it without disrupting the court? — would you desire for us to object each time?

COURT: Well, I don't know if the court reporter will know what you objected to unless you do object.

MR. PARISH: All right sir. That's fine.

COURT: I don't know what the evidence is going to show.

MR. PARISH: That's fine. We can — we'll just object. Thank you sir.

The state contends that the motion was voluntarily withdrawn so that Judge Farmer was never required to rule or, in the alternative, that the ruling was discretionary and no abuse of discretion was shown. We agree that defendant withdrew his motion when the trial court expressed its concern that a line objection would make it difficult to assure that all of defendant's objections were properly noted and preserved in the record. No ruling was necessary.

## VI.

[7] Defendant contends that the trial court erroneously allowed into evidence the hearsay testimony of three witnesses: Celia Mansary, Krendy Lynn, and Faye Puryear. We find no merit in any of these assignments of error.

On the morning of 22 October 1985 (approximately three weeks before her disappearance), the victim, Karen Puryear, spoke with Celia Mansary, a paralegal employed with East Central Community Services as an intake interviewer. During the course of the interview, Karen told Ms. Mansary about several occasions on which defendant had beaten her in the past and that defendant had threatened to kill her if she tried to take back her children from him. After pretrial motions and objections at trial, Ms. Mansary was permitted to testify to the above conversation and to her impression that Karen appeared terrified during the interview. Defendant contends that this testimony was allowed into evidence under N.C.G.S. § 8C-1, Rule 803(24), the residual hearsay exception. If so, the trial court committed error by failing to follow the six-prong test established by this Court in *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985), for determining the admissibility of hearsay evidence not specifically covered by any of the other hearsay exceptions. However, we find that the testimony was admissible under

N.C.G.S. § 8C-1, Rule 803(3) and, therefore, the *Smith* test is inapplicable. When a hearsay statement is made expressly admissible by a specific exemption category, there is no necessity for the trial court to consider the catchall provisions of the other rules. *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988). Rule 803 of the North Carolina Rules of Evidence provides, in pertinent part, as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (3) Then Existing Mental, Emotional, or Physical Condition. — A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health).

N.C.G.S. § 8C-1, Rule 803(3) (1988). The scope of the conversation between Karen and Ms. Mansary during the intake interview related directly to Karen's existing state of mind and emotional condition. "Evidence tending to show state of mind is admissible as long as the declarant's state of mind is a relevant issue and the possible prejudicial effect of the evidence does not outweigh its probative value." *Griffin v. Griffin*, 81 N.C. App. 665, 669, 344 S.E.2d 828, 831 (1986); Weinstein's *Evidence* § 803(3)[03] (1984). Karen's state of mind is highly relevant as it relates directly to the status of her relationship with defendant prior to her disappearance. The probative value of this evidence outweighs any potential prejudice to defendant. This assignment is without merit.

On 14 November 1985 the victim, Karen, spoke with Krendy Lynn, a teacher at the nursery school attended by her children, Little Eddie and Crystal. During this discussion, Karen told Ms. Lynn that she had to go to the doctor because "she had a place on her chest that she had to see about; that . . . he had hit her with the end of the gun." The trial court allowed Ms. Lynn to testify as to her recollection of the conversation over the objection and motion to strike of defendant; however, Ms. Lynn was not allowed to speculate as to the identity of Karen's assailant. Defendant contends that it was error to overrule the objections since the testimony was inadmissible hearsay. Again, we find no error. Karen's statement that she planned to go to see a doctor about a place on her chest where "he" had hit her is another type of hearsay statement made admissible into evidence by N.C.G.S. § 8C-1, Rule 803(3). The statement goes directly to Karen's state of mind,

emotional status and physical condition on the very date of her disappearance. The jury was free to draw whatever reasonable inferences it chose from the testimony.

Lastly, defendant contends that it was error to allow Faye Puryear, the mother of the victim, to testify, over objection, regarding the subject of two conversations she shared with Karen. The first conversation occurred in May or June 1985 when Karen came over to her mother's house crying and saying that defendant had kicked her out of his house. We find that this statement was proply allowed into evidence as a present sense impression by the declarant. This exception to the hearsay rule is defined as follows:

> (1) Present Sense Impression.— A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

N.C.G.S. § 8C-1, Rule 803(1) (1988). Since Karen's statement was not made while she was perceiving the event, it would have to qualify as being made "immediately thereafter." Interpreting the identical Federal Rule, the federal courts have held that "there is no *per se* rule indicating what time interval is too long under Rule 803(1). . . . [A]dmissibility of statements under hearsay excep-. tions depends upon the facts of the particular case." *United States v. Blakey*, 607 F.2d 779, 785 (7th Cir. 1979). Here, Karen's statement was made in close proximity to the event— a reasonable inference would be the length of time it took to drive from Willow Springs to her mother's house in Raleigh. Under the particular facts of this case, Karen's statement to her mother was made sufficiently close to the event to be admissible as present sense impressions under Rule 803(1).

The second conversation occurred on 14 November 1985. On this occasion, Karen told her mother that she had taken out a child support warrant against the defendant and had sought advice from an attorney regarding obtaining custody of the children. We hold that these hearsay statements are admissible as statements of then existing mental or emotional conditions. N.C.G.S. § 8C-1, Rule 803(3) (1988). As in the first two instances above, Karen's state of mind on the date she disappeared is highly relevant to show the status of her relationship with defendant and the unlikelihood of the event that she would run off and leave her children with defendant.

## VII.

[8] Defendant contends that the trial court incorrectly charged the jury on two matters: (1) premeditation and deliberation and (2) impeachment and corroboration by prior statement. First, with respect to the premeditation and deliberation instruction, it should be noted that defendant never raised a proper objection at trial. A party to a trial may not assign as error any portion of the jury charge unless objected to at trial prior to the jury retiring to deliberate. North Carolina Rules of Appellate Procedure, Rule 10(b)(2) (1988). In such cases defendant is entitled to relief only if he can show that the instructions complained of constitute "plain error" as that term is defined in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). For the reasons stated below, no such error exists in the present case.

Judge Farmer instructed the jury as follows:

Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as, the lack of provocation by the victim; conduct of the defendant before, during, and after the killing; threats and declarations of the defendant, if any; use of grossly excessive force; infliction of lethal wounds after the victim is felled; brutal or vicious circumstances of the killing; or the manner in which or the means by which the killing was done.

Defendant contends that there was no evidence of a "lack of provocation by the victim," "use of grossly excessive force," or "infliction of lethal wounds after the victim is felled" and, thus, the jury was allowed to infer premeditation and deliberation from elements unsupported by the evidence. We disagree. The above-cited instruction was delivered straight from the North Carolina Pattern Jury Instructions. N.C.P.I.—Crim. 206.10. The elements listed are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation. It is not required that each of the listed elements be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation. *See generally State v. Watson*, 222 N.C. 672, 24 S.E.2d 540 (1943). However, from our review of the record in this case, it appears that there is evidence to support each of the objectionable elements. The physical evidence obtained at the house and from the body disclosed no sign of a fight, argument or other

provocation at or near the time of the killing. The condition of the body supports an inference that excessive force was used and that the fatal gunshot wound was inflicted while the victim was already incapacitated by the previous gunshot wound to her arm.

This Court has held that:

[A] trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence. When such instructions are prejudicial to the accused he would be entitled to a new trial.

*State v. Buchanan*, 287 N.C. 408, 421, 215 S.E.2d 80, 88 (1975) (quoting *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973) ). That is not the case here. This argument is without merit.

[9] Defendant next asserts that the trial court erroneously refused to charge the jury on impeachment and corroboration by prior statement. However, our review of the record indicates that this charge was given almost verbatim from the pattern jury instructions. *See* N.C.P.I.—Crim. 105.20. Therefore, this assignment is baseless.

## VIII.

[10] Defendant's next contention is that the trial court erroneously refused to submit second degree murder as a possible verdict. "It is unquestioned that the trial judge must instruct the jury as to a lesser-included offense of the crime charged, when there is evidence from which the jury could find that the defendant committed the lesser offense." *State v. Redfern*, 291 N.C. 319, 321, 230 S.E.2d 152, 153 (1976). The factual element distinguishing murder in the first degree from second degree murder is premeditation and deliberation. Therefore, the issue presented by this assignment of error is whether the evidence of defendant's premeditation and deliberation was such as to require the submission of second-degree murder. We find that there was not and that the trial court correctly refused to charge on the unsupported lesser degree.

This Court set forth the procedure to be followed in making this determination as follows:

We emphasize again that although it is for the jury to determine, from the evidence, whether a killing was done with premeditation and deliberation, the *mere possibility of a negative finding* does not, in every case, assume that defendant

could be guilty of a lesser offense. Where the evidence belies anything other than a premeditated and deliberate killing, a jury's failure to find all the elements to support a verdict of guilty of first degree murder must inevitably lead to the conclusion that the jury disbelieved the State's evidence and that defendant is not guilty. The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of second degree murder.

*State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 657-58 (1983) (emphasis added). The direct and credible circumstantial evidence showed that Karen Puryear went to defendant's secluded, isolated home in Hoke County on the premise of a possible reconciliation. Once there, as Karen removed her clothing in anticipation of sexual intercourse, defendant shot her in the arm and, as he held her immobile by twisting her wounded arm behind her, shot her again in the base of the skull. The second shot was the cause of death. There were no bruises, cuts or scrapes on the body characteristic of a fight. The interior of the house was similarly devoid of any evidence of a struggle. Defendant's actions in the disposal of the body indicate defendant's prior careful thought and planning to hide the killing. These facts indicate a coldly calculated killing planned well in advance and not a killing occurring on the "spur of the moment" in response to some unanticipated provocation.

The state adequately established all the elements of first degree murder, including premeditation and deliberation, and defendant produced no evidence sufficient to negate these elements. The mere possibility that the jury could return with a negative finding does not, without more, require the submission of the lesser included offense—murder in the second degree.

## IX.

[11] Defendant asserts that the trial court erroneously allowed SBI agent Troy Hamlin, witness for the state, to compare physical evidence to other evidence which had been misplaced from the SBI lab where it was sent for testing and storage pending trial. The evidence at issue was the plastic bags and sheets in which

the bodies were wrapped when discovered. The odor of these materials was so intense that they were moved several times inside the SBI lab following complaints. Finally, they were placed in an outside shed. It is from this location that the plastic bags and sheets disappeared. Since the evidence was lost, the defendant contends he was denied the opportunity to have his own experts test the material, to argue the dissimilarity of the items and to refute Agent Hamlin's assertions that the articles were similar. As a result, defendant alleges his constitutional rights of confrontation and due process were violated. We find no merit in this assignment of error.

Agent Hamlin, a forensic chemist, observed the plastic bag and sheets on the day they were photographed (date the bodies were discovered), and at the various times when they were moved prior to disappearing from the storage shed. At trial, Agent Hamlin identified the photographs and explained the disappearance of the materials to the jury. He then noted the similarity of the missing items to the ones on hand found in Karen Puryear's car when he was asked the following questions on direct examination:

Q. Can you describe the sheets and pillow cases that you saw in the trunk of the vehicle, sir?

A. Yes, sir, I can. There were three pillow cases, a fitted flowered sheet; and a pink fitted sheet.

Q. Now, Mr. Hamlin, did you make any observations about the flowered sheet that you saw there and the flowered sheet which you saw from the wrappings of the body of Karen Puryear?

MR. PARISH: Objection to this comparison since the evidence has been lost, your honor.

COURT: Overruled.

A. They were somewhat similar in design. That is, they were both flowered sheets, had the same type of color.

MR. PARISH: Motion to strike.

COURT: Denied.

.  .  .  .

STATE v. CUMMINGS

[326 N.C. 298 (1990)]

Q. Now, using State's exhibit number forty-four, can you explain what you meant about how that bag is unusual, sir, and as it compared to the bag which you have observed in the wrappings from Karen Puryear's body?

A. Yes sir, I can.

MR. PARISH: Objection to the comparison of the bag that's been lost, your honor.

COURT: Overruled.

Q. Would you please do so, sir?

A. The bag that I noted earlier during the day at the gymnasium floor was a very large, clear plastic bag. It was a bag as opposed to plastic sheeting, in that I could see a flap and seams around the edges of the bag. (witness held up bag.)

Agent Hamlin testified at trial as a nonexpert witness. N.C.G.S. § 8C-1, Rule 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of the fact in issue.

His testimony was obviously based upon firsthand knowledge and observation and was clearly helpful to the jury. The credibility of Agent Hamlin's comparison testimony was for the jury to determine. The trial court did not err and defendant was not prejudiced in regard to the ruling to allow the comparison testimony.

X.

[12] Defendant next complains that the trial court erred by allowing the state to introduce into evidence two photographs, over objection, arguing that they were overly gruesome, inflammatory and prejudicial. The photographs at issue were introduced during the testimony of Dr. Page Hudson, Chief Medical Examiner of the State of North Carolina, who acknowledged that the photographs were taken at the time he performed the autopsy and were necessary for illustrative purposes. The first photograph depicted the face of Karen Puryear and the other showed the wound to her stomach. This Court has recently determined that whether the use of photographic evidence is more prejudicial than probative is a deci-

sion within the discretion of the court. *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988). In exercising that discretion, we, in *Hennis*, set forth certain factors which should be weighed by the trial court:

> The trial court's task is . . . to examine both the content and the manner in which photographic evidence is used and to scrutinize the totality of circumstances composing that presentation. What a photograph depicts, its level of detail and scale, whether it is color or black and white, a slide or a print, where and how it is projected or presented, the scope and clarity of the testimony it accompanies—these are all factors the trial court must examine in determining the illustrative value of photographic evidence and in weighing its use by the state against its tendency to prejudice the jury.

*Id.* at 285, 372 S.E.2d at 527. Here, considering the totality of the circumstances, both photographs pass the balancing test. Both photographs were introduced for purposes other than to arouse the passions of the jury—the full face shot was relevant to negate the occurrence of a struggle and the photograph of the stomach was relevant to illustrate Dr. Hudson's description of the wound. Furthermore, each of the photographs was the only one submitted of those particular body parts so there was no unnecessary repetition. There were no complaints of the manner in which the photographs were presented. Therefore, while gruesome, the photographs are relevant, illustrative of Dr. Hudson's testimony and helpful to the jury in understanding his explanation of the cause of death. Defendant has failed to show abuse of discretion by the trial court.

## XI.

[13] Defendant's next assignment of error alleges that the trial court erroneously admitted evidence seized from defendant's residence and automobiles in violation of the fourth amendment in that the search warrants were not based upon probable cause. However, defendant cites no authority for this contention and requests this Court to review the applications for the search warrants and, if error is found in their issuance, hold that the fruits of the illegal searches were improperly admitted. Rule 28(b)(5), North Carolina Rules of Appellate Procedure, states, in pertinent part, that: "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or author-

ity cited, will be taken as abandoned." Abandoned exceptions require no response.

However, in reviewing death sentence appeals, this Court has traditionally examined all possible assignments of error. There is nothing in the record to suggest that the fruits of the searches in this case were improperly admitted. This Court has adopted the *Gates* totality of the circumstances test for determining whether probable cause exists for issuance of a search warrant under the state constitution. *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984); *see also Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983) (citations omitted). "In applying this test, the magistrate must consider all the evidence contained in the affidavit submitted to determine whether there exists a fair probability that evidence of a crime can be found in a particular place." *State v. Greene*, 324 N.C. 1, 8, 376 S.E.2d 430, 435-36 (1989), *death sentence vacated on other grounds, Greene v. North Carolina*, --- U.S. ---, --- L. Ed. 2d --- (U.S. March 19, 1990) (No. 88-7306). "Reviewing courts should give great deference to the magistrate's determination of probable cause and should not conduct a de novo review of the evidence to determine whether probable cause existed at the time the warrant was issued." *State v. Greene*, 324 N.C. at 9, 376 S.E.2d at 436. Under the totality of the circumstances and upon giving due deference to the magistrate's determination, we conclude that all three search warrants were supported by extensive and complete affidavits that established unarguable probable cause. We find no prejudicial error in the guilt phase of defendant's trial.

PENALTY PHASE

[14] Defendant asserts as error the trial court's failure to submit in writing to the jury certain mitigating circumstances timely requested by defendant during the penalty phase. At the beginning of the sentencing hearing, defendant requested in writing that the following mitigating circumstances be submitted to the jury:

1. The defendant has no significant prior criminal record.

2. The defendant has no significant history of prior criminal activity.

3. The defendant, prior to this homicide, had no significant history of violent conduct.

4. The defendant has a history of being gainfully employed.

5. The defendant has been a conscientious and good worker.

6. The defendant has been a loving father to his children.

7. The defendant has a reputation with his employers as being trustworthy.

8. There was an extenuating relationship between the defendant and the victim, in that it was a domestic relationship and possible child custody dispute.

In preparing the issues and recommendation form, the trial court in its discretion placed in writing two statutory mitigating circumstances: "lack of significant prior criminal activity" and "any other circumstance or circumstances arising from the evidence which [the jury deems] to have mitigating value." The trial court verbally listed some of the remaining requested circumstances during his charge as he explained what the jury could consider under the second or "catchall" mitigating circumstance. Defendant contends that the failure to list the requested circumstances on the written form was prejudicial error. We agree and remand the case for a new sentencing hearing.

The verdict of guilty was returned on 4 May 1987. On 5 May 1987, the defendant filed the written motion requesting the court to instruct on the mitigating circumstances set forth above. This written motion does not request that the mitigating circumstances be listed in writing on the issues and recommendation form.

However, during the charge conference as to the punishment phase, which was recorded and transcribed, defendant's counsel moved that peremptory instructions be given as to some of the mitigating circumstances. He then stated to the court:

And for the jury to see in print what the State's contentions are and then they have to go looking for some themselves and then weigh against what is already before them in type we feel is prejudicial to our clients and would object to the format of the issues and recommendation as to punishment sheet.

If not peremptorily given to them as existing, and instructing them to weigh them, that if nothing else they should be at least on equal footing that evidence has been presented as to these matters.

I think they can find that if they do exist, but they ought to be able to read them and not try to catch them in, I think you said, a lengthy and much more complicated instruction from you tomorrow morning, and then go back and have this in front of them and try to remember exactly what you said and weigh all of that.

Although not artfully stated, we conclude that defendant's counsel was requesting that the mitigating circumstances be placed in writing on the form.

In charging the jury, the only reference made by the court concerning the mitigating circumstances requested by the defendant was:

Number two, you may consider any other circumstance or circumstances arising from the evidence which you deem to have mitigating value including, but not limited to, consideration as to whether the defendant has a good character, or whether the defendant was gainfully employed prior to this murder, and was a good worker, trustworthy, and conscientious, or whether the defendant is considerate and loving to his children.

In so doing, the trial court only mentioned four of the seven remaining circumstances requested by defendant. Before the jury commenced its deliberations, the court, in the absence of the jury, inquired if counsel had any corrections to the jury charge or "additional matters." Defendant's counsel responded by repeating the motion for a peremptory instruction as to certain mitigating circumstances. The court denied this motion, and defendant then stated:

Your Honor, we would then ask for, without the peremptory instruction, that they be included and listed so that the jury will not have to go looking for them, and they are there for their consideration. In that it was not directed, they ought to at least be able to see it on equal footing with the State's aggravating circumstances before them.

The court responded:

All right, sir. Motion denied since I've charged them on it.

When defendant's written motion and the requests by defendant at the charge conference, as well as his request at the court's invitation, are considered together it is manifest that defendant

requested that the proposed mitigating circumstances be placed in writing on the form. N.C.G.S. § 15A-1231(b) requires that the charge conference be recorded. We hold that defendant properly requested that the proposed nonstatutory mitigating circumstances be listed in writing on the issues and recommendation form, and that the denial of this request was error. See State v. McDougall, 308 N.C. 1, 301 S.E.2d 308 (1983); State v. Johnson, 298 N.C. 47, 257 S.E.2d 597 (1979).

To avoid any possible question concerning the requirements of McDougall and Johnson as to this issue, we now hold that where a defendant makes a timely written request for a listing in writing on the form of possible nonstatutory mitigating circumstances that are supported by the evidence and which the jury could reasonably deem to have mitigating value, the trial court must put such circumstances in writing on the form. Absent such a request, the failure of the trial court to list in writing such mitigating circumstances on the form is not error. State v. McDougall, 308 N.C. 1, 301 S.E.2d 308. This rule shall only be applied prospectively to all capital cases tried after the certification date of this opinion.

The finding of error does not end our discussion of this issue because the error is subject to a harmless error analysis. See State v. Benson, 323 N.C. 318, 372 S.E.2d 517 (1988). Because failure to submit a nonstatutory mitigating circumstance is subject to a harmless error analysis, a fortiori, failure to include such circumstances in writing on the form is also subject to the harmless error rationale. In this instance, however, it is questionable whether the violation is one of federal constitutional dimension. We hold that it is not necessary for us to decide whether the error involves constitutional questions under Lockett v. Ohio, 438 U.S. 586, 57 L. Ed. 2d 973 (1978); the defendant has demonstrated prejudicial error under N.C.G.S. § 15A-1443(a).

The evidence supported each of the requested mitigating circumstances and a rational jury could deem that each had mitigating value. The extent of that mitigating value was a matter for the jury to determine. This Court stated in Johnson, 298 N.C. at 74, 257 S.E.2d at 616-17:

A death penalty sentencing statute, however, which by its terms or the manner in which it is applied, puts some mitigating circumstances in writing and leaves others to the jury's recollection might be constitutionally impermissible. . . . For if the

STATE v. CUMMINGS

[326 N.C. 298 (1990)]

sentencing authority cannot be precluded from considering any relevant mitigating circumstances supported by the evidence neither should such circumstances be submitted to it in a manner which makes some seemingly less worthy of consideration than others.

Thus we are satisfied that our legislature intended that all mitigating circumstances, both those expressly mentioned in the statute and others which might be submitted under G.S. 15A-2000(f)(9), be on equal footing before the jury. If those which are expressly mentioned are submitted in writing, as we believe they should be, then any other relevant circumstance proffered by the defendant as having mitigating value which is supported by the evidence and which the jury may reasonably deem to have mitigating value must, upon defendant's timely request, also be submitted in writing.

Where, as here, only two mitigating circumstances are in writing on the issues and recommendation form, and the nonstatutory mitigating circumstances are only named orally by the trial court to the jury, the mitigating circumstances are not susceptible of equal consideration by the jury. Because the circumstances were not presented on an equal footing, the jury could easily believe that the unwritten circumstances were not as worthy as those in writing. Further, common sense teaches us that jurors, as well as all people, are apt to treat written documents more seriously than items verbally related to them. Had the circumstances been written on the form, the trial judge and the jury would have been required to directly address each of them. The evidence on each of the circumstances was predominantly supportive of them. We hold that defendant has shown that there was a reasonable possibility that had the error not occurred, a different result would have been reached at the sentencing hearing. The case must be remanded for a new sentencing hearing.

Other errors assigned in the sentencing hearing are not likely to reoccur; therefore, we refrain from discussing them.

We find no prejudicial error in the guilt phase of defendant's trial. For error in the sentencing phase of defendant's trial, the cause is remanded to Superior Court, Hoke County, for a new sentencing hearing.

Guilt Phase—no error.

Sentencing Phase—remanded for new sentencing hearing.

Justice WEBB dissenting.

I dissent from that part of the majority opinion which holds that the testimony of Celia Mansary was admissible. Ms. Mansary was allowed to testify that Karen Puryear had told her that defendant had beaten her on several occasions and threatened to kill her if she tried to·take the children from him.

The majority reasons that this testimony of Ms. Mansary was admissible under N.C.G.S. § 8C-1, Rule 803(3) which provides that a statement of the declarant's then existing state of mind may be admitted as an exception to the hearsay rule. The majority says these statements "related directly to Karen's existing state of mind and emotional condition."

It is true that if these things had happened to Karen Puryear she would probably have been emotional and upset about them. If this makes the testimony admissible it seems to me we have opened the door to any hearsay testimony the subject of which can be shown to have been upsetting to the declarant. This is a wide door indeed. I would limit this exception to testimony as to statements of the declarant which say what is his or her mental or emotional state. I believe this is all that was intended by the Legislature.