STATE OF NORTH CAROLINA v. PHILIP RAY DAWKINS, JR.

No. COA02-1637

(Filed 20 January 2004)

**1. Homicide— first-degree murder—no instruction on second-degree—invited error**

There was no plain error in the court not submitting second-degree murder to the jury in a first-degree murder prosecution where defendant sought to prevent just that.

**2. Evidence— hearsay—state of mind—other evidence admitted**

There was no error in the court admitting hearsay testimony in a first-degree murder prosecution where other testimony was admitted to the same effect or the evidence concerned the victim's state of mind. These statements explained the victim's conditions as shown in photographs and tended to disprove the nonabusive relationship defendant described. An express declaration of fear is not required.

**3. Homicide— first-degree murder—sufficiency of evidence**

A motion to dismiss a charge of first-degree murder for insufficient evidence was properly denied where fiber and blood evidence, items found with the body, the type of weapon used, and the location of the body linked defendant to the crime, and there was testimony that the marital relationship between defendant and the victim had deteriorated, that defendant had threatened the victim, and that she feared him. There was evidence of premeditation in threats to the victim, ill will, and efforts to conceal the body.

**4. Homicide— first-degree murder—short-form indictment—constitutional**

The short-form indictment for first-degree murder is constitutional.

On writ of certiorari by defendant to review judgment entered 3 June 1998 by Judge Marvin K. Gray in Stanly County Superior Court. Heard in the Court of Appeals 18 September 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Cunningham, Dedmond, Petersen & Smith, L.L.P., by Bruce T. Cunningham, Jr., for the defendant-appellant.*

CALABRIA, Judge.

Philip Ray Dawkins, Jr. ("defendant") seeks review of a judgment entered on a jury verdict of guilty for first-degree murder.[1] We find no error.

The State's evidence at trial tended to show the following: on 13 April 1995, Robert Beck ("Beck") discovered a body wrapped in a trash bag, towel, and blanket floating in the Blewett Falls Lake area. The body was also encircled with chains and ropes to which were attached weights and an anchor. The authorities retrieved the body from the water and subsequently determined the body was that of Wendy Dawkins ("victim"), defendant's wife. The autopsy revealed the victim had died as a result of a gunshot wound to the back of the head.

Defendant was indicted by the Richmond County Grand Jury for murder. The jury was given the option of finding defendant guilty of first-degree murder or not guilty. The jury found defendant guilty of first-degree murder, and the trial court sentenced defendant to life imprisonment without parole. Defendant argues the trial court (I) committed plain error by failing to submit second-degree murder; (II) improperly allowed hearsay evidence; (III) erred in denying defendant's motion to dismiss; and (IV) committed plain error in submitting first-degree murder to the jury when the bill of indictment did not allege all the elements of the offense.

I. Second-Degree Murder Charge

[1] Defendant asserts the trial court committed plain error by failing to submit the charge of second-degree murder to the jury after acknowledging that the evidence at trial could support either first- or second-degree murder.

In *State v. Williams*, 333 N.C. 719, 727-28, 430 S.E.2d 888, 892-93 (1993), our Supreme Court considered the effect of a defendant unequivocally indicating that he did not wish for the jury to be

---

1. Our review of the judgment is pursuant to a petition for writ of certiorari granted by this Court on 9 May 2002.

instructed on second-degree murder in response to the trial court's inquiry as to the parties' position on lesser-included offenses. In response, the trial court stated it would instruct only on first-degree murder and not submit second-degree murder to the jury. *Id.* In approving the trial court's response, the Supreme Court cited N.C. Gen. Stat. § 15A-1443(c) and *State v. Patterson*, 332 N.C. 409, 415, 420 S.E.2d 98, 101 (1992), and held the defendant was "not prejudiced by error resulting from his own conduct . . . [and] foreclosed any inclination of the trial court to instruct on the lesser-included offense of second-degree murder." *Id.*, 333 N.C. at 728, 430 S.E.2d at 893. As a result, the defendant was "not entitled to any relief and [would] not be heard to complain on appeal." *Id.*

The facts of the present case dictate the same outcome. The following exchange between the court and counsel for defendant took place during the charge conference:

THE COURT: Appears to me from the evidence that the jury could find either [first-degree murder or second-degree murder].

[ATTORNEY]: At the direction of the defendant in this case, I move the court not to charge down.

Later, the court clarified with the additional exchange:

THE COURT: Do you . . . share the same view . . . as the State, that it ought to be first degree or not guilty?

[ATTORNEY]: Yes, sir. The—the reasoning may be on a different plane, different plateau for different reasons. But we have had the opportunity to—to discuss that. . . . We've talked about that in connection with this case. We spent nine weeks in Richmond County in a motel down there. And that was the subject matter of a lot of conversation.

THE COURT: Your client is in agreement with you with respect to the issues [of first-degree or not guilty]?

[ATTORNEY]: He is. I believe he would say so.

In an abundance of caution, the trial court finally addressed defendant directly and asked him if his counsel's statements were true, and defendant responded, "Yes, sir. We have discussed it, and I am in full agreement with [him]." These exchanges make clear defendant sought to prevent the submission of the issue of second-degree murder to the jury. We will not entertain defendant's complaint that the

granting of his request prejudiced him, and this assignment of error is overruled.[2] *See State v. Barber,* 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) (holding "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review").

II. Hearsay

Defendant asserts the trial court erred in allowing certain portions of testimony by witnesses for the State because they were hearsay and violated defendant's right to confront his accusers because there was an absence of trustworthiness with respect to the hearsay statements at issue. Of course, where testimony falls within a "firmly rooted" hearsay exception, reliability is presumed. *State v. Fowler,* 353 N.C. 599, 615, 548 S.E.2d 684, 696 (2001). We examine each of the hearsay statements challenged.

A. Bonnie Thomas' Testimony

[2] Defendant asserts the trial court improperly allowed certain portions of Bonnie Thomas' ("Thomas") testimony. Thomas, the victim's aunt, testified defendant and the victim had obtained a new bedroom suite to replace the old one defendant and Laurie Harrington ("Harrington"), defendant's current wife, had shared because the victim would not sleep on the old one. Moreover, Thomas testified the victim stated she and defendant were not getting along because Harrington continued to call defendant.

"[O]ur Supreme Court has long held that when 'evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.' " *State v. Reed,* 153 N.C. App. 462, 466, 570 S.E.2d 116, 119, *disc. rev. denied,* 356 N.C. 622, 575 S.E.2d 521 (2002) (quoting *State v. Maccia,* 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984)). Defendant admitted he bought a new bed to satisfy the victim because the fact that he and Harrington had slept on it angered her. Defendant further admitted that continuing calls from Harrington caused tension between he and the victim, and the victim wanted defendant to force Harrington to stop calling, but defendant refused. In light of this testimony, we hold defendant waived his objection to this testimony.

2. We also note that if we were to approve of defendant's argument, defendant would have the advantage of forcing the jury to convict him of first-degree murder or acquit him, and then, after a conviction occurred, overturning it if the outcome was unsatisfactory.

Thomas further testified that the victim gave her photographs showing the victim with a black eye. When the victim gave the photographs to Thomas, she told her "to keep them and if anything should happen, to give them to the police." Rule 803 states, in pertinent part, as follows: "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: (3) . . . A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition . . . ." N.C. Gen. Stat. § 8C-1, Rule 803(3) (2001). "Where a state of mind, such as fear or alienation, is declared, the courts have consistently admitted statements made by the victim, usually reasoning that such a state of mind shows the relationship between the victim and the accused and is therefore relevant to the accused's possible motive." 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 217 (5th ed. 1998).

The victim's statements, accompanied by pictures showing her with a black eye, reflect the victim's fear of her uncertain future and her then-existing intent to plan for that future should "something happen." While the statement itself contains no express declaration of fear, we hold that the attendant circumstances give context to the victim's statement and clearly reflect the victim's fearful state of mind. Moreover, we note the victim went to her aunt and not her husband to ensure that photographs depicting her as physically abused reached the police. Under the circumstances, there was a sufficient relation to both the victim's state of mind and the status of her relationship with her husband to be admissible under the state of mind hearsay exception. Accordingly, this assignment of error is overruled.

B. Angie Wiggins' Testimony

Defendant asserts the trial court improperly allowed certain portions of Angie Wiggins' ("Wiggins") testimony. Wiggins was permitted to testify that the victim and defendant "got the bedroom suite because she was not going to sleep on the bed that was in the house previously because Philip's girlfriend Laurie had slept on it." As with Thomas' statements eliciting substantially the same facts, we need not address this argument since defendant testified to these facts, thereby waiving any objections to this testimony. *Reed*, 153 N.C. App. at 466, 570 S.E.2d at 119. This assignment of error is overruled.

C. Michelle Gardner's Testimony

Michelle Gardner ("Gardner") was allowed to testify that the victim told her she "thought [defendant] was going to kill her." Our

Supreme Court has consistently held that "a murder victim's statements that she fears the defendant and fears that the defendant might kill her are statements of the victim's then-existing state of mind and are 'highly relevant to show the status of the victim's relationship to the defendant.'" *State v. Hipps*, 348 N.C. 377, 392, 501 S.E.2d 625, 634 (1998) (quoting *State v. Crawford*, 344 N.C. 65, 76, 472 S.E.2d 920, 927 (1996) (citation omitted)); *see also State v. McHone*, 334 N.C. 627, 636-38, 435 S.E.2d 296, 301-02 (1993); *State v. Lynch*, 327 N.C. 210, 220-24, 393 S.E.2d 811, 817-19 (1990); *State v. Cummings*, 326 N.C. 298, 312-13, 389 S.E.2d 66, 74 (1990). This assignment of error is overruled.

D. Samuel Hamilton's Testimony

Defendant asserts the trial court erroneously allowed Samuel Hamilton ("Hamilton") to testify the victim told him that the defendant had told her he "had killed [a girl] in Rockingham, and buried her in a barn on his mother's property . . . in Rockingham." Hamilton further testified the victim told him when she later brought up the killing, defendant tried to throw her out of a moving vehicle and "told her if she ever mentioned [the killing] again, he'd kill her and put her in that same barn."

In *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990), our Supreme Court held the trial court correctly permitted a witness to testify about statements made by the decedent concerning several occasions that the "defendant had beaten her in the past and that [the] defendant had threatened to kill her if she tried to take back her children from him." *Id.*, 326 N.C. at 312, 389 S.E.2d at 74. The testimony was admissible because (1) it "related directly to [the decedent's] existing state of mind and emotional condition[,]" (2) it was "highly relevant" and directly related to "the status of her relationship with defendant prior to her disappearance[,]" and (3) the probative value of the evidence outweighed the possible prejudicial effect. *Id.*, 326 N.C. at 313, 389 S.E.2d at 74.

We find the statement in the instant case sufficiently similar to that in *Cummings* to compel the same outcome. Both challenged statements involved defendant inflicting physical abuse and threatening the victim's life if the victim repeated conduct that was displeasing to defendant. Such testimony was admissible under the holding in *Cummings* and was properly allowed by the trial court in the instant case. This assignment of error is overruled.

E. Alden Ford's Testimony

Defendant argues testimony by Alden Ford ("Ford") was improperly admitted. Ford testified he had seen bruises on the victim's arms, ribs, and legs and had seen the victim with black eyes. Ford then stated the victim had told him defendant "put them on her." Defendant objected and, after a conference outside the presence of the jury, the trial court allowed the testimony under N.C. Gen. Stat. § 8C-1, Rule 803(24) (2001).

In *State v. Walker*, our Supreme Court upheld the trial court's "admission into evidence of certain hearsay statements concerning defendant's prior physical assaults on the victim." *State v. Walker*, 332 N.C. 520, 534, 422 S.E.2d 716, 724 (1992). The in-court testimony of the victim's family and friends related "statements made by the victim to them indicating that defendant had [physically abused] her, causing the injuries they observed." *Id.* The Court admitted the testimony under the state of mind exception found in Rule 803(3), which applies to "statements made by the victim which may indicate the victim's mental condition by showing the victim's fears, feelings, impressions or experiences." *Id.*, 332 N.C. at 535, 422 S.E.2d at 725. The statements were admissible because "the victim's explanation of the origin of her cuts and bruises . . . tended to disprove the nonabusive relationship defendant described." *Id.*, 332 N.C. at 536, 422 S.E.2d at 725.

Moreover, as we stated in *State v. Mixion*, our Supreme Court has upheld, under Rule 803(3), the trial court's admission of "hearsay evidence that the victim had stated [the] defendant had previously beaten her and threatened her" despite the fact that "[t]he witnesses did not state that the victim had expressed any fear" because " 'the scope of the conversation . . . related directly to [the victim's] existing state of mind and emotional condition.' " *Id.*, 110 N.C. App. 138, 147-48, 429 S.E.2d 363, 368-69 (1993) (quoting *Cummings*, 326 N.C. at 313, 389 S.E.2d at 74). We also observed in *Mixion* that our Supreme Court has found that a "victim's statements to her son that defendant had threatened her 'revealed her then-existing fear of the defendant . . . .' " *Id.* (quoting *State v. Faucette*, 326 N.C. 676, 683, 392 S.E.2d 71, 74 (1990)). Thus, while the state of mind exception is most easily applicable when the challenged hearsay statement includes an express declaration of fear, such declarations are not absolutely required.

The hearsay testimony concerned previous statements by the victim indicating defendant had physically abused her. Defendant testi-

fied he had never physically assaulted the victim in any way either before or after they separated. As in *Walker* the statements explained the victim's condition as shown in the photographs and tended to disprove "the nonabusive relationship defendant described." Moreover, the statements cannot be excluded for want of express declarations of fear. We hold the statement was admissible under the state of mind exception to the hearsay rule because it related directly to the status of the victim and defendant's relationship and to the vic-itm's state of mind and emotional condition. This assignment of error, accordingly, is overruled.

III. Motion to Dismiss

**[3]** "A motion to dismiss on the ground of sufficiency of the evidence raises . . . the issue 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. Barden*, 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). "The existence of substantial evidence is a question of law for the trial court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* " 'The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence.' " *Id.* (quoting *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). Evidence may be direct, circumstantial, or both. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

"First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and delibera-tion." *State v. Thomas*, 350 N.C. 315, 346, 514 S.E.2d 486, 505 (1999). Defendant asserts there was insufficient evidence that he was the perpetrator of the crime or that he acted with premeditation and deliberation.

Concerning defendant's first argument, that there was not suffi-cient evidence that defendant was the perpetrator of the crime, fibers found in the victim's hair and the towel and blanket in which she was wrapped were consistent with the carpet found in defendant's house in the master bedroom. There was no sign of forcible entry into defendant's house. Luminol testing revealed the presence of blood not belonging to defendant on his master bedroom carpet around the bed and toward the entrance of the bedroom. Red and black acrylic

fibers, consistent with the blanket in which the victim's body was wrapped, were found in defendant's boat. The anchor used in an attempt to weigh down the victim's body was identical to the one missing from defendant's boat. The victim's body was also weighed down with circular weights bearing the same serial number and having an identical appearance to missing weights that defendant received from his brother-in-law and that he usually kept on his boat. The victim was shot with a .32 caliber bullet, and defendant had owned a .32 Colt semi-automatic which he claimed he no longer owned but gave conflicting reports as to whether he sold the gun, lost it in a bet, or used it to pay a debt. The victim's body was found in the Blewett Falls Lake area, with which defendant was "very knowledgeable." We also note there was testimony that the victim and defendant's relationship had deteriorated, the victim feared defendant was going to kill her, and defendant had threatened to kill her. Viewing this sampling of the evidence presented at trial in the light most favorable to the State, we conclude there was sufficient evidence that defendant was the perpetrator of the crime.

Defendant also asserts there was insufficient evidence of premeditation and deliberation.

Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.

State v. Elliott, 344 N.C. 242, 267, 475 S.E.2d 202, 212 (1996) (internal citations omitted). "Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence." State v. Gladden, 315 N.C. 398, 430, 340 S.E.2d 673, 693 (1986). In determining whether a killing was done with premeditation and deliberation, the jury may consider "the statements and conduct of the defendant before and after the killing" as well as "ill will or previous difficulties between the parties." State v. Olson, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992). Additionally, our Supreme Court has also held that "unseemly conduct toward the victim's corpse, including concealment of the body" may be used to show premeditation and deliberation. State v. Parker, 354 N.C. 268, 280, 553 S.E.2d 885, 894-95

(2001). *See also State v. Rose*, 335 N.C. 301, 319, 439 S.E.2d 518, 527 (1994), *overruled on other grounds, State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001) (holding that "evidence of an elaborate process" of removing and disposing of the victim's body was "evidence from which a jury could infer premeditation and deliberation").

Viewing the evidence in the light most favorable to the State, each of these factors has application in the instant case. Prior to the victim's death, defendant threatened to kill the victim. That there was both ill will and difficulties between defendant and the victim both is illustrated by the fact that there was fighting and conflict concerning the bedroom suite and tension due to defendant's continued contact with Harrington. Finally, there was evidence of an elaborate process of concealing the body by wrapping it in a towel, blanket, and trash bag; weighing the body down with weights and anchors; transporting the body to the Blewett Falls Lake area; and disposing of the laden body to sink after the victim had been killed. All of these factors were evidence from which the jury could permissibly infer premeditation and deliberation, and we hold that, in the light most favorable to the State, there was substantial evidence of the element of premeditation and deliberation. This assignment of error is overruled.

IV. Short-form Indictment

[4] Defendant asserts, for preservation of the issue, the question of whether the short-form indictment satisfies the requirements of the North Carolina and federal Constitutions. Our Supreme Court has upheld the constitutionality of the short-form murder indictment. *State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000); *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000). Thus, we hold accordingly.

We have carefully considered defendant's remaining arguments and found them to be without merit.

No error.

Judges McGEE and HUNTER concur.