STATE OF NORTH CAROLINA v. CHARLES KEVIN McMILLIAN

No. COA04-375

(Filed 15 March 2005)

**1. Identification of Defendants— photographic lineup—illustrative of pretrial identification**

    Evidence about a photographic lineup and the victim's identification of defendant was admissible where the evidence was admitted to illustrate the pretrial identification of defendant. The officer explained the methods used in the creation of the lineup, and both the officer and the victim testified that the victim's response was not prompted.

**2. Evidence— prior arrest for impaired driving and resulting photograph—admission not prejudicial**

    There was no prejudicial error in an attempted armed robbery prosecution where the court erred by allowing an officer to testify that he had arrested defendant for driving while impaired and the resulting photograph was used in identifying defendant. The testimony about the DWI was not sufficiently similar to the attempted armed robbery to be offered for any permissible purpose; however, defendant took the stand in his own behalf, which allowed the State to proffer evidence regarding the defendant's criminal record, and defendant revealed his prior record during his direct examination.

**3. Evidence— officer's testimony about defendant's statement—subsequent testimony—no prejudice**

    There was no prejudicial error in excluding an officer's testimony about an armed robbery defendant's statement where any error was cured by subsequent testimony.

**4. Evidence— testimony about victim's identification—rebuttal—admissibility**

    The trial court did not err in an attempted armed robbery prosecution by allowing an officer to testify about a witness's conversation with him regarding the identification of defendant. The witness with whom the officer talked had testified for defendant, the officer was called in rebuttal, and his testimony was relevant because it concerned the circumstances surrounding the parties, was probative of his investigation of defendant as

the perpetrator, and aided the jury in understanding the circumstances surrounding the investigation.

Appeal by defendant from judgment entered 22 September 2003 by Judge James Floyd Ammons, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 10 January 2005.

*Roy Cooper, Attorney General, by Jay L. Osborne, Assistant Attorney General, for the State.*

*Jon W. Myers, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from a judgment entered upon his conviction by a jury of attempted robbery with a dangerous weapon, arising from defendant's attempt to steal money from a pizza delivery man. The evidence presented at trial tended to show that on the evening of 10 September 2002, a call was placed for pizza delivery to 353 Porter Road. When the delivery driver, Michael LaMorte ("LaMorte"), approached the front door, a man holding a gun came out of the bushes, stood approximately 10 feet away, and told him to drop the pizza and give him all his money. The assailant cocked the gun; LaMorte told him he "wasn't going to give him anything" and kicked his assailant in the groin. LaMorte testified that there was enough light to identify his assailant, who was standing about an arm's length away and made an in-court identification of the defendant. LaMorte returned to the pizza parlor and reported the attempted armed robbery to the police. LaMorte testified that he later picked the defendant's photo from a photographic lineup. He also testified that approximately a week after the incident, defendant and another man came to the pizza parlor. He recognized defendant as being the person who had tried to rob him, and acknowledged such when questioned by his manager, Tammy Koonce. Koonce continued to press him, however, asking him three or four times if he was sure. He became upset and told her that "I just picked somebody out because they all look alike," acknowledging that his remark was a racial one.

Sergeant Adam Brinkley ("Brinkley") testified, over defendant's objection, that on 12 April 2002 he was on road patrol and stopped a vehicle which he had seen on other occasions at the Porter Road residence, having answered "quite a few calls for service there." After he stopped the vehicle and ran a license check, he determined that the defendant was driving the vehicle with the permission of the owner,

Ola Mae Wilson ("Wilson"), who resided at 353 Porter Road. Brinkley testified that he charged defendant "with DWI and driving with no license," and took a photograph "at the time of the arrest."

Detective Joel Morissette ("Morissette") testified that after taking a description of his assailant from LaMorte, he investigated the address and realized that Wilson had not ordered any pizza. Wilson also indicated that she did not know anyone meeting the description of LaMorte's assailant. Morissette reasoned that whoever attempted the robbery must have been familiar with 353 Porter Road, so he "researched the location" and discovered defendant's arrest record, noting that his photograph met the description given by LaMorte. Morissette used this photograph, which he testified was more recent than the one Brinkley made, and five others "that would be consistent with his photograph" to create a random photo lineup. Using this lineup, LaMorte identified defendant as the person who robbed him. On cross examination, Morissette testified that he took a written statement from the defendant, but the trial court sustained the State's objection as to what defendant had told Morissette.

Tammy Koonce testified for defendant and related what had occurred when defendant came to the pizza parlor a couple of days after the attempted robbery of LaMorte. Koonce testified that she had gone to high school with defendant, and when he came to the store he asked her why he had been accused of robbing LaMorte. She testified that when she asked LaMorte if he recognized defendant, LaMorte replied, "No, I've never seen him before in my life." When pressed, LaMorte told Koonce that defendant was the guy he had picked out of the lineup. She then testified that later in the evening, she asked LaMorte twice more why he could not initially identify the defendant, and LaMorte finally responded, ". . . they all look alike." Koonce also testified that she had a previous relationship with defendant's cousin, but that it was ending at the time of the alleged robbery. Koonce testified that she related LaMorte's statement to Morissette and the prosecutor but that the prosecutor became upset with her because she had tampered with evidence and "tried to play lawyer."

Defendant's girlfriend, Demica Sinclair ("Sinclair"), testified on defendant's behalf that on 10 September 2002 they went to the grocery store and went back to their house where they remained the whole evening. She also testified that defendant did not have a job, and that he sold drugs.

STATE v. McMILLIAN

[169 N.C. App. 160 (2005)]

Defendant testified in his own behalf that he was innocent, that he did not know anything about the robbery, that he was home with Sinclair on the evening in question, and that he did not rob LaMorte and in fact had never seen him until he went to the pizza place on 17 September 2002 to find out why he had been accused. He said that he did not have any conversation with LaMorte while there and only spoke with Koonce, who said that she did not think LaMorte was very sure that defendant had attempted to rob him. He testified that he contacted Morissette after he made bond and denied participating in the crime, but did not provide Morissette with his girlfriend's name because Morissette did not ask for it.

Defendant further testified that he had a DWI; had been arrested for drugs once or twice; pled guilty to possession with intent to manufacture, sell and deliver cocaine, and to misdemeanor possession of drug paraphernalia; and that he had dealt drugs for two or three years. He stated that he made $1,000.00 a week selling drugs and that his customers included residents at 353 Porter Road. He explained that he had traded cocaine for the use of Wilson's car when he was pulled over in April of 2002.

On cross examination, defendant acknowledged that in his written statement, he claimed he was with a friend at the friend's house all day and that Sinclair may not have remembered that he went to a friend's house or that she was mistaken about the time that he came home, but that she was not mistaken about being with him that night.

Wilson testified that she lived at 353 Porter Road, and that defendant had visited her roommate, but that she had never bought drugs from him. She explained that she let defendant's friend borrow her car, and perhaps that friend had allowed defendant to drive it. She also testified that her house was "busted" for drugs, but that they belonged to a houseguest.

After the defense rested, the State recalled Morissette and examined him regarding Koonce's conversation with him during which she related LaMorte's statement to Koonce that he had picked defendant's photo out of the lineup because "they all look alike." Morissette testified that he initially thought Koonce had made an honest mistake by questioning LaMorte in front of defendant about his accusation, but Koonce's "motives became clear" because she was dating defendant's cousin and had gone to high school with defendant. He stated that he was concerned Koonce was

intimidating LaMorte and victimizing him a second time by badgering him about being sure of his identification.

---

On appeal, defendant brings forward three arguments in support of eight of the eleven assignments of error contained in the record on appeal. His remaining assignments of error are deemed abandoned. N.C.R. App. P. 28 (b)(6) (2004). Defendant contends the trial court erred by (1) permitting testimony concerning defendant's criminal disposition and admitting into evidence the photographic lineup and testimony about how it was created; (2) failing to allow evidence of defendant's conversation with Morissette where he presented his alibi; and (3) allowing evidence regarding Morissette's interview with one of defendant's witnesses.

[1] Defendant's first argument is twofold: first, that the trial court erred by admitting Brinkley's testimony concerning his arrest of defendant for DWI, and second, the inclusion of the photographic lineup created by Morissette. He contends the evidence created an impermissible inference that defendant had a bad character.

Our Supreme Court has held that photographic lineups are admissible as long as they do not violate a defendant's right to due process by being impermissibly suggestive, creating the danger of irreparable mis-identification. *State v. Grimes*, 309 N.C. 606, 609-10, 308 S.E.2d 293, 294-95 (1983) ("all that is required is that the lineup be a fair one and that the officers conducting it do nothing to induce the witness to select one participant rather than another"). In support of his argument, defendant cites *State v. Fulcher*, 294 N.C. 503, 512, 243 S.E.2d 338, 345 (1978), where the Court noted that the State could not offer evidence of defendant's prior criminal record or bad character. In *Fulcher*, however, the Court held the photographs were admissible to illustrate the pre-trial identification of the defendant. *Id.*

In this case, the photographic lineup was admitted for precisely the same purpose. Morissette explained the methods used in the creation of the lineup, and both he and LaMorte testified that LaMorte's response when identifying the defendant was unprompted. The admission of evidence concerning the photographic lineup and LaMorte's identification of defendant was clearly not error.

[2] We agree with defendant, however, that the admission of Brinkley's testimony concerning his arrest of defendant for DWI was error. N.C. Gen. Stat. § 8C-1, Rule 404(b) states that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). While we acknowledge the State's argument that the photograph and testimony were offered to show defendant's identity, and thus meet the exception contained in Rule 404(b), under the balancing test required by N.C. Gen. Stat. § 8C-1, Rule 403 (2003), we must consider "whether the incidents are sufficiently similar and not too remote in time so as to be more probative than prejudicial." *State v. Schultz*, 88 N.C. App. 197, 202, 362 S.E.2d 853, 857 (1987), *affirmed*, 322 N.C. 467-68, 368 S.E.2d 386 (1988). Here the testimony by Brinkley that he arrested defendant for DWI is not sufficiently similar to the attempted armed robbery for it to be offered for any permissible purpose. Thus, the trial court erred when it overruled the defendant's objections to the testimony. For two reasons, however, such error does not entitle defendant to a new trial.

It is the defendant's burden not just to show error but also to show that defendant was prejudiced by the error. N.C. Gen. Stat. § 15A-1443 (a) (2003). The erroneous admission of evidence "will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." *State v. Smith*, 155 N.C. App. 500, 508, 573 S.E.2d 618, 624 (2002) (citation omitted), *disc. review denied*, 357 N.C. 255, 583 S.E.2d 287 (2003).

In this case, defendant took the stand as a witness and testified in his own behalf. Where a defendant takes the stand as a witness, the State is permitted to proffer evidence regarding the defendant's criminal record. "It is unquestionably true . . . that when a defendant charged with a criminal offense does not take the stand as a witness and does not offer evidence of his good character, the State cannot offer evidence of his bad character, including his previous criminal record." *Fulcher*, 294 N.C. at 512, 243 S.E.2d at 345. But when testifying, a "defendant is subject to impeachment by cross-examination generally to the same extent as any other witness" *State v. Faison*, 330 N.C. 347, 361, 411 S.E.2d 143, 151 (1991) and evidence of a prior crime is admissible "if elicited from the witness" on cross examination. N.C. Gen. Stat. 8C-1, Rule 609 (2003).

Moreover, defendant revealed his arrest record and prior criminal record, including the DWI, on his direct examination. Where evidence is admitted over objection and subsequently admitted without objection, any error in the earlier admission of the evidence is cured. *State v. Dawkins*, 162 N.C. App. 231, 234, 590 S.E.2d 324, 328, *disc. review denied*, 358 N.C. 237, 595 S.E.2d 439 (2004). In light of his subsequent testimony, defendant cannot now argue that he was prejudiced by Brinkley's statements.

[3] For similar reasons, we reject defendant's second argument. In his second argument, defendant maintains the trial court erred because it did not allow Morissette to testify concerning defendant's statement to him. However, even assuming *arguendo* there was error in the exclusion of Morissette's testimony concerning the contents of the statement, such error was cured by defendant's subsequent testimony concerning his statement and when Morissette was recalled and re-examined about the statement. *See State v. Hageman*, 307 N.C. 1, 24, 296 S.E.2d 433, 446 (1982) (no prejudice from erroneous exclusion of evidence where same or similar evidence subsequently admitted).

[4] Finally, defendant argues that it was error to permit Morissette to testify about Koonce's conversation with him regarding LaMorte's alleged admission to her that he had never seen defendant before he came to the pizza parlor. Defendant contends the testimony was not relevant and that it impermissibly interjected Morissette's personal opinion into the proceedings.

Evidence that tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. N.C. Gen. Stat. § 8C-1, Rule 401 (2003). Koonce testified on defendant's behalf about a conversation she had with Morissette and the prosecutor in which she related LaMorte's alleged statement to her. Morissette was called as a rebuttal witness regarding the same conversation. His testimony was relevant, because it concerned "one of the circumstances surrounding the parties, and [was] necessary to be known, to properly understand their conduct or motives." *State v. Arnold* 284 N.C. 41, 48, 199 S.E.2d 423, 427 (1973). Morissette's answers were probative of his investigation regarding LaMorte's identification of defendant as the perpetrator, and aided the jury in understanding the circumstances surrounding the investigation. Defendant's argument is overruled.

We hold defendant received a fair trial, free from prejudicial error.

No Error.

Judges CALABRIA and GEER concur.