IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-602

Filed 18 June 2025

Rowan County, Nos. 20CRS000308-790, 20CRS000309-790, 20CRS000310-790

STATE OF NORTH CAROLINA

v.

KIM YOST FRALEY, Defendant.

Appeal by Defendant from judgment entered 15 July 2022 by Judge Jonathan W. Perry in Rowan County Superior Court. Heard in the Court of Appeals 11 February 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Phillip K. Woods, for the State.*

*Appellate Defender Glenn Gerding, Assistant Appellate Defender Jillian C. Franke, for Defendant-Appellant.*

CARPENTER, Judge.

Kim Yost Fraley ("Defendant") appeals from judgment entered after a jury found her guilty of two counts of exploitation of an older adult of more than $100,000 and one count of exploitation of an older adult of less than $20,000. Defendant argues the trial court erred by: (1) admitting hearsay statements from Edith Fraley ("Edith") as excited utterances, and (2) denying Defendant's motion to dismiss the exploitation charges for insufficient evidence. After careful review, we discern no error.

## I. Factual & Procedural Background

On 18 May 2020, a Rowan County grand jury indicted Defendant for: two counts of obtaining property valued at $100,000 or more by false pretenses; two counts of exploitation of an older adult of more than $100,000; one count of obtaining property valued at $20,000 or more by false pretenses; and one count of exploitation of an older adult of less than $20,000. On 23 May 2022, Defendant's case proceeded to trial, and the evidence tended to show the following.

Edith was born in 1933. Edith's husband, who was the sole income provider and managed all the finances, passed away in 2012. Edith was diagnosed with dementia in 2013. In 2016, Edith's son, Bill Fraley ("Bill"), and his wife, Defendant, began caring for Edith. Bill and Defendant became Edith's power of attorney and managed her medical appointments, finances, mail, and taxes. Defendant was employed at Thrivent Financial, Edith's bank, as an office professional from 2007 to 2018.

Cynthia Fraley ("Cynthia"), Edith's daughter, often visited Edith. In September 2017, while Cynthia was visiting Edith, Cynthia observed Edith open her mail, which included bank statements. Defendant and Bill usually picked up Edith's mail, but they were out of town on vacation on this occasion. According to Cynthia, as Edith read her bank statements, Edith appeared surprised and instantly became upset and angry. Cynthia further testified that, immediately after reading her bank statements, Edith exclaimed "that she didn't know who had been doing it, that she wanted her money back right then, [and that] she had given nobody permission to get

money out of her account."

In February 2018, Edith was admitted to the hospital with health problems. Subsequently, Cynthia, Bill, and their brother, Robert Fraley, were informed that Edith was going to require full-time care either at home or in an assisted living facility. When Cynthia and her brothers began using Edith's Thrivent Financial bank account to pay for her care, they discovered "someone had been in there taking withdrawals out and it was down to very, very little." As a result, Cynthia filed a report with Thrivent Financial and reached out to law enforcement, who began an investigation into Edith's finances.

Edith passed away in 2019; consequently, she was unavailable to testify at trial. Thus, Defendant objected to Edith's statements as inadmissible hearsay, including "someone is taking money out of my bank account," "I want it back now," and "[I] never told them nor gave permission to anyone to withdraw money from [my] account." When the trial court conducted a voir dire on the matter, the State sought to admit these statements as exceptions to the hearsay rule, arguing excited utterances or then-existing mental, emotional, or physical conditions. The trial court ruled the statements were admissible as excited utterances.

At the close of the State's evidence, Defendant moved to dismiss all charges for insufficient evidence. The trial court granted Defendant's motion to dismiss as to the charges of obtaining property by false pretenses but denied the motion as to the exploitation charges. At the close of Defendant's evidence, Defendant renewed her

motion to dismiss the exploitation charges. According to Defendant, the State did not present substantial evidence to prove Defendant knowingly deceived Edith. The trial court denied Defendant's motion.

The jury found Defendant guilty of two counts of exploitation of an older adult of more than $100,000 and one count of exploitation of an older adult of less than $20,000. The trial court sentenced Defendant to: sixteen months minimum to twenty-nine months maximum for the first count of exploitation of an older adult of more than $100,000; sixteen months minimum to twenty-nine months maximum for the second count of exploitation of an older adult of more than $100,000; and six months minimum to seventeen months maximum for the conviction for exploitation of an older adult of less than $20,000. The trial court also ordered Defendant to pay $267,698.27 in restitution, less the restitution or settlement amount in Defendant's related civil case.[1] Defendant gave oral notice of appeal in open court.

In December 2022, Defendant withdrew her appeal, which according to Defendant, was based on representations from her trial counsel. Subsequently, Defendant contacted North Carolina Prisoner Legal Services, who determined that Defendant withdrew her appeal because she erroneously believed she would risk receiving a longer sentence if she prosecuted her appeal. Counsel from North

---

[1] A civil case related to the instant case was pending during Defendant's criminal trial. In particular, Edith filed a lawsuit against Defendant, Bill, and Chapman Signs based on the same allegations made during Defendant's criminal trial.

Carolina Prisoner Legal Services filed a petition for writ of certiorari ("PWC") with this Court asking for Defendant's appeal to be reinstated, and for the superior court to conduct an indigency determination. On 24 October 2023, this Court granted Defendant's PWC.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) admitting Edith's statements as excited utterances and (2) denying Defendant's motion to dismiss the exploitation charges for insufficient evidence.

## IV. Analysis

### A. Excited Utterances

First, Defendant argues the trial court erred by admitting Edith's hearsay statements as excited utterances. In particular, Defendant asserts that seeing an unexpected balance in a bank statement is not a sufficiently startling event. We disagree.

A trial court's determination as to the admissibility of hearsay is reviewed de novo. *State v. Lowery*, 278 N.C. App. 333, 338, 860 S.E.2d 332, 336 (2021). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–

33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2023). "Hearsay is not admissible except as provided by statute or by [the Rules of Evidence]." N.C. Gen. Stat. § 8C-1, Rule 802 (2023). One such hearsay exception is the excited utterance exception. N.C. Gen. Stat. § 8C-1, Rule 803(2) (2023). An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*

The excited utterance exception requires: "(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985) (citation omitted). We recognize excited utterances as an exception to the hearsay rule because:

> [C]ircumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces spontaneous and sincere utterances . . . . The trustworthiness of this type of utterance lies in its spontaneity. . . . There is simply no time to fabricate or contrive statements spontaneously made during the excitement of an event.

*State v. Reid*, 335 N.C. 647, 662, 440 S.E.2d 776, 782 (1994) (quotation marks and citation omitted).

Here, the State elicited three of Edith's statements through Cynthia's testimony, including: "someone is taking money out of my bank account;" "I want it back now;" and "[I] never told them nor gave permission to anyone to withdraw money from [my] account." The State sought to use these statements to prove that Defendant withdrew money for personal use from Edith's bank account without Edith's knowledge or permission. Both parties concede the statements are hearsay and, therefore, are inadmissible unless an exception applies. *See* N.C. Gen. Stat. § 8C-1, Rule 801(c).

The trial court ultimately admitted Edith's statements under the excited utterance exception. Defendant does not challenge the spontaneity of the statements, instead arguing the circumstances were not sufficiently startling as required for excited utterances. In essence, Defendant argues that opening a bank statement and discovering an unexpectedly low balance is not a sufficiently startling event. Defendant's argument, however, overlooks significant context and prior caselaw regarding the excited utterance exception.

It is well established that "[w]hether a statement is an excited utterance is determined by *the state of mind of the speaker*." *State v. Wilkerson*, 363 N.C. 382, 417, 683 S.E.2d 174, 195 (2009) (citation omitted and emphasis added). Whether an event is sufficiently startling or stressful to the declarant involves a primarily subjective standard. *State v. Thomas*, 119 N.C. App. 708, 713, 460 S.E.2d 349, 352 (1995). Specifically, we must consider whether circumstances were capable of

- 7 -

"suspending [the declarant's] reflective thought." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985).

In September 2017, Edith—an approximately eighty-four-year-old widow with dementia—made the challenged statements immediately upon her discovery that a significant amount of money was missing from her bank account. Leading to this discovery, Edith did not manage her finances so that she was aware of each withdrawal as they occurred. As a result, this was an instance where Edith discovered a large sum of money missing at once.

Given the context of her finances and visible emotion immediately after she read her bank statements, Edith's circumstances demonstrate the suspension of her reflective thought. *See Smith*, 315 N.C. at 86, 337 S.E.2d at 841. In evaluating "the state of mind of the speaker," when Edith made the challenged statements, she was under the stress of excitement from discovering a large sum of money was missing from her life savings. *See Wilkerson*, 363 N.C. at 417, 683 S.E.2d at 195. Accordingly, the trial court did not err in allowing Edith's statements as excited utterances.

Additionally, Defendant argues that even if Edith's statements were excited utterances, they are unreliable and should not have been admitted at trial. Specifically, Defendant contends that Edith's dementia makes her statements unreliable. Given the circumstances surrounding Edith's statements and Defendant's own assertion at trial that Edith knowingly authorized Defendant to make the withdrawals despite her dementia, Defendant's argument does not

overcome the presumption of reliability for statements that qualify as a hearsay exception. *See State v. Dawkins*, 162 N.C. App. 231, 234, 590 S.E.2d 324, 327–28 (2004). Therefore, we need not address Defendant's residual hearsay argument under *State v. Stutts*, 105 N.C. App. 557, 414 S.E.2d 557 (1992). Accordingly, Defendant's argument fails.

## B. Motion to Dismiss

Finally, Defendant argues the trial court erred by denying her motion to dismiss the exploitation charges. Specifically, Defendant contends the State did not present sufficient evidence to prove she knowingly acted with deception. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Under a de novo review, "'[this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen*, 356 N.C. at 647, 576 S.E.2d at 319).

With a motion to dismiss, " 'the question [] is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980).

In making this determination, the evidence must " 'be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . .' " *State v. Winkler*, 368 N.C. 572, 574–75, 780 S.E.2d 824, 826 (2015) (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980) (citations omitted)). In other words, if the record developed at trial contains "substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* at 575, 780 S.E.2d at 826 (internal quotation marks and citations omitted). " 'Contradictions and discrepancies do not warrant dismissal of the case; rather, they are for the jury to resolve. Defendant's evidence, unless favorable to the State, is not to be taken into consideration.' " *State v. Agustin*, 229 N.C. App. 240, 242, 747 S.E.2d 316, 318 (2013) (quoting *State v. Franklin*, 327 N.C. 162, 172, 393 S.E.2d 781, 787 (1990)).

A person commits exploitation of an older adult if they: (1) stand in a position of trust and confidence with an older adult; and (2) knowingly, by deception; (3) obtain or use the older adult's funds, assets or property; (4) to temporarily or permanently deprive the older adult of the use, benefit, or possession of the funds, assets, or

property or to benefit someone else; and (5) the value of the funds, property, or assets reaches a certain dollar amount. *See* N.C. Gen. Stat. § 14-112.2(b) (2023).

Here, Defendant only challenges the sufficiency of the evidence as to one element of the exploitation charges—whether she acted knowingly, by deception. As explained above, however, the State provided admissible evidence that Edith was unaware of the extent of the withdrawals Defendant made from Edith's bank account. Particularly, Cynthia testified that as Edith discovered the withdrawals from her bank account, Edith exclaimed, "someone is taking money out of my bank account," "I want it back now," and "[I] never told them nor gave permission to anyone to withdraw money from [my] account."

In addition, Cynthia testified that, on several occasions, she offered to help Defendant manage Edith's finances to which Defendant told Cynthia to "keep [her] nose out of [Defendant's] business" and that Defendant would handle Edith's finances by herself. Cynthia similarly testified that when she attempted to complete Edith's taxes in 2018 and asked Defendant for Edith's tax-related paperwork from the previous years, because Defendant was then responsible for Edith's taxes, Defendant repeatedly told Cynthia that Edith's tax paperwork was lost. But Cynthia later discovered Defendant was lying because she had not filed taxes for Edith since 2015.

Finally, Thrivent Financial employee Alayne Rossum testified that she interviewed Defendant following Cynthia's complaint to Thrivent Financial about the withdrawals from Edith's account. Rossum stated that after she asked Defendant if

she knew why she was being investigated, Defendant inquired, "if it was having anything to do with the withdrawals that were made from [Edith's] account?" Rossum also testified that Defendant was "adamant" that Edith signed the withdrawal forms until Defendant admitted she copied Edith's signature after Rossum confronted Defendant with the withdrawal signatures that did not match Edith's signature. In addition, when discussing the withdrawals with Rossum, Defendant said "Bill, my husband, knew about this. It wasn't just me."

In the light most favorable to the State, Edith's excited utterances and the testimony by Cynthia and Rossum are evidence that "a reasonable mind might accept as adequate to support" that Defendant acted knowingly, with deception. *See Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169. Because the State presented substantial evidence of each element of exploitation of an older adult, the trial court did not err by denying Defendant's motion to dismiss.

## V. Conclusion

As Edith's statements were spontaneous and made in the context of a sufficiently startling event, the trial court properly admitted them as excited utterances. Additionally, the trial court did not err by denying Defendant's motion to dismiss the exploitation charges. Accordingly, we discern no error.

NO ERROR.

Judges ZACHARY and MURRY concur.